756 So.2d 806 (1999)
Nelson ROBERT, Sr. a/k/a Nelson Cilvestre Robert, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01769-COA.
Court of Appeals of Mississippi.
December 14, 1999.
*807 Judson T. Tucker, Meridian, Attorney for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Nelson Robert appeals the judgment of the Lauderdale County Circuit Court convicting him of sale of cocaine, raising the following three issues as error

ISSUES
I. THE CIRCUIT COURT ERRED IN ALLOWING TESTIMONY CONCERNING APPELLANT'S ALLEGED PREDISPOSITION TO SELL COCAINE.
II. THE CIRCUIT COURT ERRED IN REFUSING TO GRANT APPELLANT'S REQUESTED JURY INSTRUCTIONS NUMBERED D2 AND D3 CONCERNING THE DEFENSE OF ENTRAPMENT.
III. THE CIRCUIT COURT'S SENTENCE IS DISPROPORTIONATE TO THE CRIMES COMMITTED AND CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 28 OF THE CONSTITUTION OF THE STATE OF MISSISSIPPI.
¶ 2. Finding error, we reverse and remand for a new trial. We will address all the issues as they may reappear at the new trial.

FACTS
¶ 3. R.C. Smith, a confidential informant, and Joshua Coleman, an undercover narcotics agent, made several cocaine buys from the defendant, Nelson Robert. The first three buys took place at the defendant's home on June 6, 1997, June 10, 1997, and June 11, 1997, and the undercover agent bought two rocks on each occasion. The fourth buy took place in Room 332 of the Budgetel Hotel on June 12, 1997, and the agent bought five rocks of crack cocaine. All transactions were audio taped, and the last transaction was also videotaped.
¶ 4. The defendant testified that he was given eleven rocks of crack cocaine on June 6, 1997 by the confidential informant in lieu of money that Smith owed him. Robert also testified that Smith said he knew someone who would buy the cocaine so that Robert could get his money back and that he would bring the person by later. The defendant claims entrapment through a supply and buy situation because he only sold the eleven rocks to the undercover agent to try and get the money he was owed. Robert claims that he had never sold drugs before these instances and that he never would have, had he not been tricked. Robert claimed he went to the hotel to make a sale, but the person on the videotape was not always him, that the agents had altered the tape or manufactured part of the tape.
¶ 5. The confidential informant testified he did not give the defendant the cocaine and that he did not go see Robert on June 6, 1997. He also testified that he had purchased cocaine from Robert on several other occasions not in question here. Agent Coleman, the undercover officer, and the case agents for the various buys *808 also testified they did not supply the confidential informant with any drugs nor did they instruct the confidential informant to give Robert any drugs. They further testified that the confidential informant was not told that Robert was the target until immediately before the buy. Coleman testified that Smith was searched before and after the buy and that he was not out of his sight from the time Smith was told that Robert was the target until after the post buy meeting.
¶ 6. Coleman testified that he bought cocaine from the defendant on four separate occasions. He also testified that the defendant had numerous rocks of cocaine when he made each of the buys, and that Robert had at least five rocks left after the last buy was made. Furthermore, Coleman stated that Robert asked him if he would need any more drugs tomorrow.
¶ 7. Jovann McClinthen testified that she had purchased cocaine from Robert and witnessed him sell cocaine to other individuals on prior occasions. She also testified that she was with Smith on the day Officer Merchant came by the house and told Smith to come to the task force office, and that they went straight to the task force office together.

ANALYSIS

I. THE CIRCUIT COURT ERRED IN ALLOWING TESTIMONY CONCERNING APPELLANT'S ALLEGED PREDISPOSITION TO SELL COCAINE.
¶ 8. Entrapment is an affirmative defense which concedes the factual component of the underlying offense. However, entrapment occurs when one is induced to commit an offense he was not otherwise predisposed to commit for the purpose of trapping him in its commission and prosecuting him for the offense. Tanner v. State, 566 So.2d 1246, 1248 (Miss.1990); Avery v. State, 548 So.2d 385, 387 (Miss. 1989); Moore v. State, 534 So.2d 557, 558 (Miss.1988); King v. State, 530 So.2d 1356, 1359 (Miss.1988). When entrapment is pled as a defense, evidence of predisposition is always relevant and therefore admissible. Moore, 534 So.2d at 558; see Sayre v. State, 533 So.2d 464, 466 (Miss. 1988); M.R.E. 401. Predisposition is always relevant because the very defense of entrapment suggests that the person never would have committed such a crime had he not been persuaded or enticed. Moore, 534 So.2d at 559; Barnes v. State, 493 So.2d 313, 315 (Miss.1986). Accordingly, if he is already predisposed to commit the crime and law enforcement officials merely furnish him with the occasion or opportunity for doing so, entrapment is not a viable defense. Tanner, 566 So.2d at 1248; see Avery, 548 So.2d at 387; King, 530 So.2d at 1359. Thus, the trial court did not err by allowing evidence of predisposition because the defendant made his predisposition to sell drugs an imperative aspect of the case by claiming entrapment. This issue is without merit.

II. THE CIRCUIT COURT ERRED IN REFUSING TO GRANT APPELLANT'S REQUESTED JURY INSTRUCTIONS NUMBERED D2 AND D3 CONCERNING THE DEFENSE OF ENTRAPMENT.
¶ 9. The appellant basically admitted all of the elements of the crime charged and relied on the defense of entrapment. Once the defendant has made a prima facie case of entrapment the burden of proof shifts to the prosecution, and the defendant has the right to have the issue of entrapment submitted to the jury on proper instructions. Gamble v. State, 543 So.2d 184, 185 (Miss.1989); Ervin v. State, 431 So.2d 130, 133-34 (Miss.1983).
¶ 10. There are two types of entrapment situations. The standard entrapment instruction, which the lower court gave in the case at bar as jury instruction No. C-16, read as follows:
"Entrapment" means inducing or leading a person to commit a crime not originally planned or contemplated by that person.

*809 Evidence has been presented that Nelson Robert, Sr., was induced by law enforcement officers or their agents, R.C. Smith, to commit the crimes of Sale of Cocaine. For you to find Nelson Robert, Sr., guilty, the State must prove to your satisfaction beyond a reasonable doubt that Nelson Robert, Sr., was already willing to commit the crimes by having the predisposition to commit such crimes, and that the law enforcement officers or their agent, R.C. Smith, merely gave the defendant the opportunity to commit the crimes of Sale of Cocaine.
¶ 11. The standard entrapment instruction defines entrapment as inducing a person to do something he would not originally contemplate doing or would not otherwise be "predisposed" to do. Thus, under the standard instruction it is impossible to be entrapped for committing a crime a defendant was otherwise predisposed to commit.
¶ 12. The second entrapment situation exists in certain situations where even though predisposition to commit a crime exists, the State's offensive conduct will prescribe a finding of entrapment as a matter of law. "The State's participation can become so offensive that the only appropriate antidote is to discharge the accused, notwithstanding the fact that he may have been predisposed and that this entrapment defense may otherwise fail." Tanner v. State, 566 So.2d 1246, 1250 (Miss.1990)(emphasis added). Several cases have held that such an offensive situation exists when the State both supplies and buys the illegal drugs. See Gamble v. State, 543 So.2d 184 (Miss.1989); Tanner v. State, 566 So.2d 1246; Daniels v. State, 422 So.2d 289 (Miss.1982); Sylar v. State, 340 So.2d 10 (Miss.1976). It is implicit in Gamble that a supply and buy situation constitutes entrapment as a matter of law. In Gamble, the Supreme Court held that where the evidence of entrapment stands uncontradicted, undisputed, and unimpeached, a directed verdict in favor of the defendant must be granted. Gamble, 543 So.2d at 185. If a defendant testifies that he obtained the contraband from an informer and the informer contradicts the defendant's allegations the issue of entrapment as a matter of law becomes a jury question, and the case must go to the jury with the entrapment as a matter of law instruction along with the standard entrapment instruction. Instruction D-2, denied by the trial court, read as follows:
"Entrapment" means inducing or leading a person to commit a crime not originally planned by him.
You are instructed that where an informer or other agent generally acting in concert with law enforcement authorities, furnishes a defendant with cocaine for the purpose of then arranging a sale of the cocaine by the defendant to an undercover officer, which sale is then consummated, defendant has been entrapped as a matter of law even though predisposition to commit the crime may appear, and notwithstanding that the furnishing of the cocaine is unknown to and contrary to the instructions of the law enforcement authorities.
¶ 13. In the case sub judice the defendant testified that the informer gave him the contraband, thus, even though the State refuted the testimony, a question of fact still existed. Hence, the jury must be properly instructed as to the legal aspects of both situations. There was sufficient evidence to warrant the standard entrapment instruction as well as the entrapment as a matter of law instruction. It was error for the lower court to refuse the entrapment as a matter of law instruction.

III. THE CIRCUIT COURT'S SENTENCE IS DISPROPORTIONATE TO THE CRIMES COMMITTED AND CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 28 OF THE CONSTITUTION *810 OF THE STATE OF MISSISSIPPI.
¶ 14. The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Similarly, the Mississippi Constitution, Article 3, Section 28 provides that "[c]ruel or unusual punishment shall not be inflicted, nor excessive fines be imposed." It is well established that sentencing is within the discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute. Hoops v. State, 681 So.2d 521, 537 (Miss.1996); Reynolds v. State, 585 So.2d 753, 756 (Miss.1991). Generally, a sentence cannot be disturbed on appeal as long as it does not exceed the maximum term allowed by the statute. Fleming v. State, 604 So.2d 280, 302 (Miss. 1992). Additionally, the Supreme Court of Mississippi has long held "that a sentence which does not exceed statutory limits is not cruel or unusual punishment." Baker v. State, 394 So.2d 1376, 1378 (Miss.1981). Furthermore, the court in Herring v. State, 691 So.2d 948, 958 (Miss.1997), stated that "We have never found a maximum penalty in a drug case-even if the sentences were to run consecutively-to be cruel and unusual punishment."
¶ 15. In regards to the proportionality of a sentence the Supreme Court has used the three-pronged analysis as set forth by the United States Supreme Court in Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The Solem analysis requires a court's proportionality analysis under the Eighth Amendment to be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions. Id. However, Solem was later limited by Harmelin. "In light of Harmelin, it appears that Solem is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of `gross disproportionality.'" Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir.1996) (citing Harmelin v. Michigan, 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). The Mississippi Supreme Court discussed the Solem test in Stromas v. State, 618 So.2d 116 (Miss.1993), a case similar to the one at bar. In Stromas, a thirty-year sentence was imposed pursuant to Miss. Code Ann. § 41-29-139(b)(1) for the sale of a small amount of cocaine and the court affirmed, stating the following:
Although Stromas sold only a small amount of cocaine, he received the maximum term penalty, 30 years, but he received less than the maximum total penalty since no fine was imposed ... Although this sentence seems quite severe, it is not a "grossly disproportionate" sentence for the crimes that Stromas committed. Drug offenses are very serious, and the public has expressed grave concern with the drug problem. The legislature has responded in kind with stiff penalties for drug offenders. It is the legislature's prerogative, and not this Court's, to set the length of sentences. Because this sentence was within the statutory guidelines, and because our legislature, as a matter of public policy, has called for harsh penalties for drug offenders such as Stromas, Solem v. Helm is not implicated in this case. Declaring a sentence violative of the Eighth Amendment to the U.S. Constitution carries a heavy burden and only in rare cases should this Court make such a finding.
Id. at 123.
¶ 16. Robert received less than the maximum sentence as well as less than the maximum fine. We hold that the rationale used in Stromas also applies to the case at bar, and the sentence is not grossly disproportionate. Thus, we need not discuss the three pronged analysis of Solem. This assignment of error is without merit.
*811 ¶ 17. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTIONS OF COUNT I OF SALE OF COCAINE AND SENTENCE OF FIFTEEN (15) YEARS AND FINE OF $5,000; COUNTS II, III, AND IV OF SALE OF COCAINE AND SENTENCE OF TEN (10) YEARS ON EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SENTENCES TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES IMPOSED ARE REVERSED AND REMANDED FOR A NEW TRIAL AND PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE TAXED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR.